IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
JAN 3 1 2020
Clerk, U S District Court
District Of Montana
Billings

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FRANK PATRICK CANEO,

Defendant.

CR 19-80-BLG-SPW

ORDER

Before the Court is Frank Patrick Caneo's motion to suppress evidence obtained from a vehicle in which he was a passenger. (Doc. 23). For the following reasons, the Court grants the motion.

I. **Facts**

In the early afternoon of February 20, 2019, Billings Police Officer Richard Gilmore was patrolling downtown Billings when he observed a green Pontiac with a missing brake light. Officer Gilmore turned on his overhead lights to initiate a traffic stop. As the Pontiac pulled over, Officer Gilmore observed the front passenger of the Pontiac reach into the backseat, grab what appeared to be a coat, and put it on. Officer Gilmore radioed for backup because he thought the passenger might run.

1

After the Pontiac pulled over, Officer Gilmore exited his vehicle and approached the driver's side of the Pontiac. When the driver rolled down the window, Officer Gilmore smelled the odor of women's perfume. The passenger's coat was now in his lap. Officer Gilmore explained the reason for the stop, asked for the driver's license and registration, and the passenger's license. The driver appeared to be nervous to Officer Gilmore. After receiving the requested paperwork, Officer Gilmore returned to his vehicle to check the licenses and registration and write up a warning. A criminal history search of the occupants and third-party owner of the Pontiac showed none had a criminal history related to drugs.

After writing up the warning, Officer Gilmore returned to the driver's side of the Pontiac. He gave the occupants' back their licenses and accompanying paperwork. Officer Gilmore then explained he was issuing a written warning, handed the warning to the driver, and asked if she had any questions. The driver said no but asked for his name. Officer Gilmore replied, "Officer Gilmore," the driver said "thank you," and Officer Gilmore responded, "No problem. Is there anything illegal inside the vehicle? Knives, guns, drugs, paraphernalia, anything like that?" The driver said "no." Officer Gilmore asked, "can I search the vehicle?" The driver said "no." Officer Gilmore asked again, "can I search the car," to which the driver again said "no." Officer Gilmore then explained "I'm one

of the K9 officers in town, can I deploy my dog around your vehicle?" The driver stammered, "I mean . . . I," before Officer Gilmore added "it only takes a second." After a couple seconds of silence, the driver said "I mean, I don't care."

Officer Gilmore had the driver and passenger exit the Pontiac and deployed his dog. The dog twice indicated to the presence of narcotics in the Pontiac. Officer Gilmore subsequently impounded the Pontiac, obtained a search warrant, and searched the vehicle. The search uncovered methamphetamine paraphernalia and a pistol.

The passenger, Frank Patrick Caneo, was indicted for being a prohibited person in possession of a firearm. (Doc. 1). He argues the evidence found in the vehicle should be suppressed because it was the result of an unconstitutional seizure in violation of *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015).

## II. Legal Standard

If a person is stopped for violating the traffic code, the stop may not be prolonged beyond the time reasonably required to complete the mission of the stop absent independent reasonable suspicion to detain the person further. *Rodriguez v. United States*, 135 S.Ct. at 1614 (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). The mission of the stop includes determining whether to issue a ticket for the infraction and inquiries ordinary to enforcing the traffic code. *Rodriguez*, 135 S.Ct. at 1615. Such inquiries are, typically, checking the driver's license,

determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1615. Authority for the stop ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Rodriguez*, 135 S.Ct. at 1614.

## III. Discussion

Here, the parties agree the authority for the stop ended when Officer Gilmore gave the driver the printed warning because at that point, tasks tied to the traffic infraction were complete. The question turns to whether the driver and Caneo remained seized after that point, and if so, whether Officer Gilmore had developed independent reasonable suspicion to justify the extended seizure.

A seizure occurs when a police officer, through coercion, "physical force, or a show of authority, in some way restricts the liberty of a person." *U.S. v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004). A person's liberty is restrained when, "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Washington*, 387 F.3d at 1068 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

The government argues the moment Officer Gilmore handed the driver the written warning, the encounter transitioned from a seizure to a consensual encounter. But in the context of a valid traffic stop, significantly more is required

4

to communicate to a citizen that the stop is officially over and he or she is free to leave. In *United States v. Chavez-Valenzuela*, the Ninth Circuit held a traffic stop had not transitioned into a consensual encounter when the officer returned the driver's license and registration because the officer immediately began asking incriminating questions of the driver. 268 F.3d 719, 724-725 (9th Cir. 2001). "A reasonable motorist," the Ninth Circuit wrote, "—even with license and registration in hand—most likely would not have believed he could disregard the officer's inquiry and end the conversation." 268 F.3d at 725.

This case offers a similar situation. Officer Gilmore issued a written warning and asked if the driver had any questions. After being told no, Officer Gilmore immediately asked if there was anything illegal in the vehicle and if he could search it. After being told no twice, Officer Gilmore then asked if he could run his dog around the vehicle, to which the driver stuttered a response before Officer Gilmore pushed "it only takes a second." At no point after issuing the written warning did Officer Gilmore give any indication the driver and Caneo were free to go. He never said he was finished with them, never told them they could leave, never told them they could say no to his request to search the vehicle. There are simply no facts that would indicate to a reasonable person who had just been validly stopped that the stop was officially over and he or she was free to leave. On the contrary, immediately asking the driver and Caneo if there was anything

illegal in the vehicle, if the vehicle could be searched, and if the drug dog could sniff the vehicle, would all indicate to a reasonable person that they were *not* free to leave after receiving the written warning. The driver and Caneo therefore continued to be seized after authority for the stop ended. The continued seizure was unconstitutional unless Officer Gilmore developed independent reasonable suspicion.

Reasonable suspicion requires "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 61 (2014) (citing *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014)). The reasonable suspicion necessary to justify an investigative stop is dependent upon both the content of information possessed by police and its degree of reliability. *Navarette*, 134 S.Ct. at 1687 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). In determining reasonable suspicion, the Court must consider all of the information under the totality of the circumstances. *Navarette*, 134 S.Ct. at 1687.

At most, Officer Gilmore observed the driver was nervous, the Pontiac smelled of perfume, and Caneo had put on his coat, taken off his coat, and then placed his coat on his lap. There's nothing particularly suspicious about a nervous driver or the smell of perfume, as Officer Gilmore agreed on the witness stand. Caneo's behavior is perhaps slightly unusual but with nothing more it remains just that: unusual. The reasonable suspicion standard would be no standard at all if it

was satisfied by a person who couldn't decide whether he wanted his coat on or off. Considering these facts under the totality of the circumstances, the Court holds Officer Gilmore did not develop independent reasonable suspicion to continue the seizure.

Therefore, because the driver and Caneo remained detained after authority for the stop ended, the evidence was obtained as the result of a constitutional violation and must be suppressed. *Florida v. Royer*, 460 U.S. 491, 507-508 (1983).

## IV. Conclusion and order

Caneo's motion to suppress (Doc. 23) is granted. All evidence obtained from the vehicle is suppressed.

DATED this 31st day of January, 2020.

SUSAN P. WATTERS
United States District Judge